Pro Se 10 (Rev. 12/16) Complaint for the Conversion of Property

# UNITED STATES DISTRICT COURT
for the

District of

Division

Rex Norman Hall Sr

_Plaintiff(s)_
_(Write the full name of each plaintiff who is filing this complaint._
_If the names of all the plaintiffs cannot fit in the space above,_
_please write "see attached" in the space and attach an additional_
_page with the full list of names.)_

-v-

See attached

_Defendant(s)_
_(Write the full name of each defendant who is being sued. If the_
_names of all the defendants cannot fit in the space above, please_
_write "see attached" in the space and attach an additional page_
_with the full list of names.)_

Case No.  8:24CV266

_(to be filled in by the Clerk's Office)_

Jury Trial: _(check one)_ ☐ Yes  ☒ No

OFFICE OF THE CLERK
2024 JUL -2  AM 11: 30
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA
FILED

## COMPLAINT FOR THE CONVERSION OF PROPERTY
(28 U.S.C. § 1332; Diversity of Citizenship)

## I.  The Parties to This Complaint

### A.  The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Rex N Hall Sr |
| Street Address | 702 Ave G |
| City and County | Plattsmouth — Cass |
| State and Zip Code | Nebraska 68048 |
| Telephone Number | 402-505-2171 |
| E-mail Address | rnh52864@gmail.com |

### B.  The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title _(if known)_. Attach additional pages if needed.

Defendant No. 1

Page 1

Burlington Northern RailRoad
                and
Cass County Nebraska


Page 3

II Basis for Jurisdiction:

    B. Cass County Nebraska
              Nebraska
              Nebrask

Pro Se 10 (Rev. 12/16) Complaint for the Conversion of Property

**Defendant No. 1**

Name — BurlingNorthen Rail Road

Job or Title *(if known)*

Street Address — 2650 Lou Menk Dr.

City and County — Fort Worth

State and Zip Code — Fort toor Texas

Telephone Number

E-mail Address *(if known)*

**Defendant No. 2**

Name — Cass County Nebraska

Job or Title *(if known)*

Street Address — 346 Main St.

City and County — Plattsmouth Cass

State and Zip Code — Nebraska 68048

Telephone Number — 402-296-9334

E-mail Address *(if known)*

**Defendant No. 3**

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

**Defendant No. 4**

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Pro Se 10 (Rev. 12/16) Complaint for the Conversion of Property

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Under 28 U.S.C. § 1332, federal courts may hear cases in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000. In that kind of case, called a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff. Explain how these jurisdictional requirements have been met.

### A.    The Plaintiff(s)

1.   If the plaintiff is an individual

The plaintiff, *(name)* Rex Norman Hall Sr. , is a citizen of the State of *(name)* Nebraska .

2.   If the plaintiff is a corporation

The plaintiff, *(name)* _____ , is incorporated under the laws of the State of *(name )* _____ , and has its principal place of business in the State of *(name)* _____ .

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

### B.    The Defendant(s)

1.   If the defendant is an individual

The defendant, *(name)* _____ , is a citizen of the State of *(name)* _____ . Or is a citizen of *(foreign nation)* _____

_____ .

2    If the defendant is a corporation

The defendant, *(name)* Burlington Northern Rail Road , is incorporated under the laws of the State of *(name)* Texas , and has its principal place of business in the State of *(name)* Texas .

Or is incorporated under the laws of *(foreign nation)* _____ ,

and has its principal place of business in *(name)* _____ .

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)* See a Hached

Pro Se 10 (Rev. 12/16) Complaint for the Conversion of Property

---

C.    **The Amount in Controversy**

The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

See attached

---

III.    **Statement of Claim**

A.    Describe the property that you own that is the subject of this complaint, including its value.

See attached

---

B.    How and when did you come to own the property?

See attached

---

C.    How and when did the defendant(s) obtain possession of the property? Describe with particularity the actions the defendant(s) took to convert the property.

See attached

---

D.    *(If the defendant(s) rightfully came into possession of the property):* Describe how and when you notified the defendant(s) that the property belonged to you. Describe how and when you demanded that the defendant(s) deliver or return the property, and what response you received from the defendant(s). Attach a copy of any written correspondence with the defendant(s), if such copies exist.

See attached

---

IV.    **Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages. See attached

Page 4 of 5

Page 4

II  Basis for Jurisdiction

C. The Amount in Controversy:
because I have owned, maintained,
and improved a piece of land for over
10 yrs — railroad land documents show
that they own the same piece of land —
Railroad documents not matching state
documents show niether can have proper
completed documentation for Federal
Land Transfer.

As for the current value of the land,
it was a junkyard with infested buildings
that have been removed and the landscape
has been changed. $180,000 00

Page 4

III    Statsement of Claim

A. .73 acres on a paved road, out of
city limits but only a 15 min walk from
downtown Plattsmouth. I've moved the
dirt so that we are out of the flood zone,
and we have a view of the river bottom
from over the tree tops.

B. Right after my father died I was
seeing a woman, who thought her
and I could clean it up together.

C. As for BNSF I would only think that
Eminent Domaine at one point in history,
and Cass County Nebraska claim tax
rights without provide clear possession
to the Plaintiff.

D. I notified BNSF threw thier managing
company JhL, by June 20 of 2020
Cathy Clune was working on a proposal
to send the railroad to settle this issue.

Page 4

## IV  Relief

The relief I seek is justice of having
the property that I paid for, to have the
proper land discription for said lot and
ownership match on all documents along
with marked survey. Giving no longer
than 60 days to complete neccessary and
close this issue.

Pro Se 10 (Rev. 12/16) Complaint for the Conversion of Property

## V.    **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:      7 - 2 - 2024

Signature of Plaintiff

Printed Name of Plaintiff      Rex Hall

### B.    **For Attorneys**

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

ORIG

# OMAHA AREA BOARD OF REALTORS®
## PURCHASE AGREEMENT

(This is a legally binding contract. If not understood, seek legal advice.)

**R** REALTOR®

The REALTOR® negotiating this agreement is a member of the Omaha Area Board of REALTORS® and as such is governed by its Code Of Ethics And Rules Of Fair Business Practice.

_Platies Real Estate and Ins. Inc._ ........................................ REALTORS®    Date: _10-5-12_

The undersigned Purchaser, (whether one or more) agrees to purchase the Property described as follows:

1. **Address:** _15928 River Road / 15924 & 15934 Plattsmouth NE._    Zip Code _68048_

2. **Legal Description (Property):** _18-12-14 Tr of land SE¼ SE¼ (.73)_

as surveyed, platted and recorded in _CASS_ County, NE, including all fixtures and equipment permanently attached to the Property.

3. **Personal Property:** The only personal property included is as follows: All existing _As per listing all appliances_

4. **Conveyance:** Provided that the Seller (whether one or more) has good, valid and marketable title, in fee simple, Seller agrees to convey title to Property to Purchaser or his nominee by ☐ warranty deed ☐ or _DEED OF TRUST._ free and clear of all liens, encumbrances or special taxes levied or assessed, ☑ no exceptions ☐ except _____ subject to all building and use restrictions, utility easements abutting the boundary of the Property, and covenants now of record.

5. **Assessments:** Seller agrees to pay any assessments for paving, curb, sidewalk or utilities previously constructed, or ordered or required to be constructed by the public authority, but not yet assessed.

6. **Consideration:** Purchaser agrees to pay _Forty Three Thousand dollars and no/100_ DOLLARS ($ _43,000⁰⁰_ ) on the following terms : $ _4300 ⁰⁰ Check_ (Deposit)

deposited herewith as evidenced by the receipt attached below. If the Deposit is paid by check, it will be cashed. In the event this offer is not accepted by the Seller of the Property within the time specified, or in the event there are any defects in the title which cannot be cured as specified below, the Deposit shall be refunded. In the event of refusal or failure of the Purchaser to consummate the purchase, the Seller may, at his option, retain the Deposit for failure to carry out the terms of this Purchase Agreement, subject to the terms of the listing agreement.

7. ☐ **All Cash:** Balance of $ _____ shall be paid in cash, or certified or cashier's check at time of delivery of deed, no financing being required.

8. ☐ **Conditional Upon Financing:** Balance of $ _____ shall be paid in cash, or by certified or cashier's check at time of delivery of deed, conditioned upon Purchaser's ability to obtain financing to be secured by first mortgage or deed of trust, on above described Property in the amount of $ _____. The financing will be ☐ VA, ☐ FHA, ☐ CONVENTIONAL, ☐ P.M.I. ☐ or _____, with terms providing for initial interest not exceeding _____% per annum, plus mortgage insurance if required, amortized over not less than _____ years, with initial monthly principal and interest payment of not more than $ _____ plus taxes and insurance. The note will be for a period of not less than _____ years. Loan origination/service fee to be paid by Purchaser. Purchaser agrees to make application for financing within five (5) business days of acceptance of this offer, to sign all papers and pay all costs in connection therewith, and to establish escrow reserves as required. If the financing is not approved within _____ days from date of acceptance, this offer shall be null and void, and the Deposit will be returned to Purchaser. However, if processing of the application for financing has not been completed by the lending agency within the time limit shall be automatically extended until the lending agency has, in the normal course of its business, advised either approval or denial. If the original loan application is denied, the Purchaser authorizes and instructs the Lender to notify the Purchaser, the Seller and all real estate licensees involved in the transaction, in writing. Upon notification of denial, this Purchase Agreement shall be void and the Deposit will be refunded to Purchaser unless Seller and Purchaser mutually agree in writing within five (5) business days from receipt of notification of loan denial that an additional loan application will be made or that additional loan information will be submitted to the original Lender. Discount points not to exceed _____ will be paid by ☐ Purchaser ☐ Seller.

9. ☐ A. **Seller Financing:** - See attached addendum   ☐ B. **Loan Assumption:** - See attached addendum.

10. _Seller to do a deed of trust ; or carry back until May 1st 2013 with no payment from purchaser. Earnest deposit to be used as closed deposit and down payment. Property is being bought AS IS Condition. Seller to occupy 15924 & 15928 until 6-1-2013 / purchaser to have occupancy (15934) as of closing. Purchaser will pay closing costs, deed of trust for both buyer/seller. Water bill to be split between buyer/seller for a term up to 6-1-13_

11. **Taxes:** ☐   **Douglas/Sarpy County Taxes:** All consolidated real estate taxes which become delinquent in the year in which closing takes place shall be treated as though all are current taxes, and those taxes shall be prorated as of date of ☐ possession, ☐ closing, ☐ or

☒   **Other Counties Taxes:** All consolidated real estate taxes for the year in which closing takes place (based on current assessment and tax rate) shall be prorated as of date of ☐ possession, ☒ closing, ☐ or _and credited back to buyer_

12. **Rents, Deposit and Leases, If Rented:** All leases and rents shall be current at closing. Any tenant deposits and leases shall be assigned to Purchaser at no cost. All rents shall be prorated to date of closing. Copies of all current leases shall be provided to the Purchaser at the time of closing.

13. **Sanitary and Improvement District (S.I.D.):** Purchaser understands that this property is located within S.I.D. # _N/A_ and acknowledges receipt of the most recently filed S.I.D. Statement.

14. **Conveyance of Title:** Seller shall through Seller's Agent or closing agent furnish a current title insurance commitment or complete abstract of title to Purchaser as soon as practical. If title defects are found, Seller must cure them within a reasonable time. If title defects are not cured within a reasonable time period, the Purchaser may rescind this agreement and the Deposit shall be refunded. Approximate closing date shall be _within 2 weeks from acceptance_ and possession date shall be _Same_, at _____ m.. The Real Estate Settlement Procedures Act ("RESPA") 14 U.S.C. 2601 et.seq. and its accompanying regulations make it clear that if the Purchaser pays any part of the title insurance policy, the Seller cannot make the sale conditioned on the use of a particular title insurance company. According to the buyers rights under RESPA, Purchaser hereby directs the divided insurance work to _Sell title and ABSTRACT_ or ☐ Seller discretion. The cost of any title insurance policies and endorsements will be equally divided between Purchaser and Seller. _ELAINE Berg 402-296-4251_

Purchase Agreement — Cont.

**15. Escrow Closing:** Purchaser and Seller acknowledge and understand that the closing of the sale may be handled by an Escrow Agent and that the Broker is authorized to transfer the Deposit or any other funds it receives to said Escrow Agent. After said transfer, Broker shall have no further responsibility or liability to Purchaser or Seller for the accounting for said funds. Escrow Agent's or the Broker's charge for the escrow closing shall be equally divided between Purchaser and Seller unless Purchaser is obtaining a VA or FHA loan, then such costs of the closing shall be paid by Seller. It is understood the Purchaser will designate the Escrow Agent. At closing Purchaser is required to have cash or certified or cashier's check for the balance of amounts due.

**16. State Documentary Tax:** The State Documentary Tax on the deed shall be paid by the Seller.

**17. Insurance:** Any risk of loss to the Property shall be borne by the Seller until title has been conveyed to the Purchaser. In the event, prior to closing, the structures on the Property are materially damaged by fire, explosion or any other cause, Purchaser shall have the right to rescind this Purchase Agreement, and Seller shall then refund the Deposit to Purchaser. Purchaser agrees to provide their own hazard insurance at closing.

**18. Wood Infestation:** Purchaser (Seller, in the case of a new VA loan) agrees to pay the cost of a wood destroying insect inspection of the building and attached and detached structures, and Seller agrees to pay for any treatment or repair work found necessary for issuance of a wood destroying insects warranty. Purchaser agrees to accept the treated Property upon completion of repairs. Provided, however, if treatment and repairs exceed ☐ 2%   ☐ or _____ of purchase price, this Purchase Agreement may be cancelled by Seller and/or Purchaser, by written notice delivered to the other party within 5 days of receipt of a wood destroying insect inspection report, which inspection report must be delivered to the Seller and Purchaser within 10 days after acceptance of this Purchase Agreement.   *NONE REQUIRED*

**19. Smoke Detector:** Seller agrees to install, at Seller's expense, smoke detectors as required by law.

**20. Remuneration:** Purchaser and Seller acknowledge and understand that real estate licensees involved in this transaction may receive financial remuneration from the sale of title insurance or other forms of insurance or service as defined in an attached addendum, if applicable.

**21. Release of Information:** Purchaser and Seller authorize the release of financing information on the purchase of this property to the Great Plains REALTORS® Multiple Listing Service, Inc.

**22. Condition of Property:** Seller agrees to maintain the heating, air conditioning, water heater, sewer, plumbing, electrical systems and any built-in appliances in functional and operable condition until delivery of possession. Seller will allow Purchaser to walk through property within _____ hours before closing to confirm compliance with this Purchase Agreement.

**23. Survey:** Purchaser agrees to pay for a ☐ Improvement Location Survey;  ☐ Boundary and Improvement Location Survey;  ☐ ALTA (American Land Title Association) Survey; ☐ waived if not required by lender and Purchaser.   *NONE REQUIRED*

**24. Seller Property Condition Disclosure Statement:** Purchaser acknowledges receipt of Seller Property Condition Disclosure Statement.

**25. Purchaser's Personal Inspection:** This offer is based upon Purchaser's personal inspection or investigation of the property and not upon any representation or warranties of condition by Seller or any limited agents involved in this transaction. *If finished sq.ft., age, location of property lines, lot size, condition of improvements are important to Purchaser's decision to purchase, Purchaser acknowledges the limited agents have advised Purchaser to make independent investigations.*

**26. Property Inspection Acknowledgment:** Purchaser has been advised of the availability of property inspections, and:  (Initial One)
_____ See attached Inspection Addendum   ✓ Purchaser does not choose to have a property inspection performed.

**27. Home Warranty Acknowledgment:** Purchaser has been advised of the availability of Home Warranty, and: (Initial One)
_____ Home warranty accepted and paid by _____; Plan Selected is _____; Cost is $_____.
_____ Home warranty coverage rejected by Purchaser.

**28. Lead-Based Paint Addendum:** If the residential dwelling/improvements on the Property were constructed prior to 1978, Seller agrees to execute a Lead-based Paint Addendum, to be attached to this Purchase Agreement:

**29. Modification in Writing:** Any modification of the terms of this agreement must be in writing and signed by all parties.

**30. Offer Expiration:** This offer to purchase is subject to acceptance by Seller on or before _____, at _____ o'clock _____. M., Omaha, NE  time.  Purchaser acknowledges receipt of a signed copy of this offer to purchase.

IN WITNESS WHEREOF, the undersigned parties executed this AGREEMENT, consisting of _____3_____ pages.

Purchaser: _Rex N Hall Jr._      SS/Fed. ID# _374 561 708_      Witness: _____

Purchaser: _____      SS/Fed. ID#: _____      Witness: _____

Address: _____      City: _____ State: ____ Zip: ____  Phone: _____

---

### RECEIPT

(NAMES FOR DEED) RECEIVED FROM: _REX N. HALL SR._  _Single_

the sum of _Forty Three Hundred and NO/100_ _____ ($ _4300.00_ ) DOLLARS

(by _Check_ ) to apply to the purchase price of the Property on terms and conditions as stated. This receipt is not an acceptance of the above offer to purchase.

_Alltec Real Estate and Ins Inc_      _Scott Lindahl_
REALTOR® (Company Name)      AGENT'S NAME (Printed)

_216 Washington Ave._      _Scott Lindahl_      _297-3690_
OFFICE ADDRESS      AGENT'S SIGNATURE

_3740_      _296-4414_      _580116_      _235-2303_
BROKER CODE #      PHONE      AGENT CODE #      HOME PHONE #

_15928 River Road_
Property Address:

© 1/03 Omaha Area Board of REALTORS® Inc.      Page 2 of 3

Purchase Agreement – Cont.

## ACCEPTANCE

The Seller, whether one or more, accepts the foregoing offer to purchase this _Oct 4 2012_ , on the terms stated and agrees to convey title to the
date

Property, deliver possession, and perform all the terms and conditions set forth, and acknowledges receipt of a copy of this agreement with all identified addenda and an Estimated
Seller's Closing Statement: _Accepted as written._

IN WITNESS WHEREOF, the undersigned Seller executes this agreement as of the date set forth above.

Seller Name Typed/Printed: _Stephen C. Grosshans_

Seller: _____    SS/Fed. ID#:_____    Witness: _Vicki K. Huddleston_

Seller: _____    SS/Fed. ID#:_____    Witness: _____

STATE OF _____    STATE OF _____

COUNTY OF _____    COUNTY OF _____

The foregoing Purchase agreement was acknowledged before me on    The foregoing Purchase agreement was acknowledged before me on

_October 4, 2012_ at _____ o'clock __ m., Omaha, NE time,    _____ at _____ o'clock __ m., Omaha, NE time,
date    date

by _Stephen C. Grosshans_    by _____
Seller's Name (Printed)    Seller's Name (Printed)    Seller's Name (Printed)    Seller's Name (Printed)

_Vicki K Huddleston    May 14 2015_    _____
NOTARY PUBLIC    COMMISSION EXPIRES    NOTARY PUBLIC    COMMISSION EXPIRES

SEAL:    SEAL:

General Notary - State of Nebraska
VICKI K. HUDDLESTON
My Comm. Exp. May 14, 2015.

## REAL ESTATE CERTIFICATION

We the undersigned Seller(s) Purchaser(s) and Agent(s), involved in this transaction, each certify that the terms of this Purchase Agreement are true to the best of our knowledge and belief and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Purchase Agreement.

Purchaser _____ _10/3/12_    Seller _____ _10/4/12_
date    date

Purchaser _____    Seller _____
date    date

Agent _Scott Crandall_ _10/3/12_    Agent _Vicki K. Huddleston_ _10-4-12_
date    date

## PURCHASER RECEIPT

Purchaser acknowledges receipt of a fully executed copy of this Purchase Agreement on _10/10/12_ .    NOTE: At closing Purchaser is required to
have cash or certified or cashier's check for the balance of amounts due.    date

Purchaser _____    Purchaser _____

_15928 River Road_
Property Address:

#6191

EXHIBIT A

THAT PORTION OF THE SE¼ OF THE SE¼ OF SECTION 18, T12N, R14 EAST OF THE 6TH P.M.,CASS COUNTY, NEBRASKA DESCRIBED AS FOLLOWS: COMMENCING AT THE INTERSECTION OF THE EAST LINE OF SAID SE¼ SE¼ OF SECTION 18 WITH THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY'S (FORMERLY BURLINGTON NORTHERN, INC.) FORMER MAIN TRACK CENTERLINE, AS ORIGINALLY LOCATED AND CONSTRUCTED UPON, OVER AND ACROSS SAID SECTION 18; THENCE NORTHWESTERLY ALONG SAID FORMER MAIN TRACK CENTERLINE FOR A DISTANCE OF 578.0 FEET; THENCE NORTHEASTERLY AT RIGHT ANGLES TO SAID MAIN TRACK CENTERLINE FOR A DISTANCE OF 15.0 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTHWESTERLY PARALLEL WITH SAID FORMERLY MAIN TRACK CENTERLINE FOR A DISTANCE OF 200.0 FEET; THENCE NORTHEASTERLY AT RIGHT ANGLES TO SAID FORMER MAIN TRACK CENTERLINE FOR A DISTANCE OF 190.0 FEET, MORE OR LESS, TO THE SOUTH LINE OF THE COUNTY ROAD, AS LOCATED AND CONSTRUCTED; THENCE EASTERLY ALONG SAID SOUTH LINE OF THE COUNTY ROAD FOR A DISTANCE OF 160.0 FEET; THENCE SOUTHERLY IN A STRAIGHT LINE TO THE POINT OF BEGINNING





June 17, 2020
11:00 AM

DISCLAIMER: This map is not intended for conveyances, nor is it a legal survey. The information is presented on a best-efforts basis, and should not be relied upon for making financial, survey, legal or other commitments.

1:661

Building Footprint          Sections

City Limits

Parcels

0        0.005      0.01              0.02 mi

0        0.0075    0.015            0.03 km

Cass County
gWorks.

# *Cass County Surveyor*

Courthouse       Room 108   Plattsmouth, Nebraska  68048

(402) 296-9362

*CHARLES P. JORDAN*                    *Cass County Surveyor*

July 1, 2024

Rex N. Hall, Sr.
702 Ave G
Plattsmouth, NE 68048

re: Tract of land located in Section 18-T12N-R14E of the 6th P.M.,
    Cass County, Nebraska

Rex,

I researched the records in the Courthouse and found that:

1) the deed recorded in Book 8 of General Deed, pg 312, is very vague, and lacking
   proper information in the metes and bounds given, to close the description,
   (meaning from the described point of beginning, thence following the given data,
   to meet the same point with the last call in the deed);

2) the point of beginning could not actually be determined, because it was relative
   to the "original", former main centerline of the railroad tracks, which are no
   longer there, (or any remnants thereof), due to the re-location of the main tracks,
   sometime in the early to mid 1970's, (also, there were too many curve's before
   arriving at the point of beginning);

3) that any surveyor, including myself, attempting to determine that point of beginning,
   probably could not do so with any kind of certainty.

4) This is to certify that I would not issue a surveyor's certificate indicating that I made
   a ground survey of the land described in Book 8 of General Deed, pg 312, which
   would meet the Minimum Standards for Surveys in Nebraska, in effect at the time,
   a survey would be made.

CHARLES P. JORDAN   LS420
CASS COUNTY SURVEYOR

(1)

12-14

NEBRASKA DOCUMENTARY
STAMP TAX

OCT 3 0 2012

$ 96.75  BY RP

FILED
CASS COUNTY, NE.

2012 OCT 30 AM 9: 53

BK _8_ Gen PG 312

REGISTER OF DEEDS

# 6191 . $ 10.50

# WARRANTY DEED

Record and return to:
**Bell Escrow Services, Inc.**
**543 Main Street**
**Plattsmouth, NE 68048**

**KNOW ALL MEN** by these presents that, **STEPHEN C. GROSSHANS, A SINGLE PERSON**, herein called the grantor whether one or more, in consideration of One Dollar and other valuable consideration received from grantee, do hereby grant, bargain, sell, convey and confirm unto **REX N. HALL SR., A SINGLE PERSON**, herein called the grantee whether one or more, the following described real property in **Cass** County, **Nebraska**:

> **THAT PORTION OF THE SE¼ OF THE SE¼ OF SECTION 18, T12N, R14 EAST OF THE 6TH P.M.,CASS COUNTY, NEBRASKA DESCRIBED AS FOLLOWS: COMMENCING AT THE INTERSECTION OF THE EAST LINE OF SAID SE¼ SE¼ OF SECTION 18 WITH THE BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPANY'S (FORMERLY BURLINGTON NORTHERN, INC.) FORMER MAIN TRACK CENTERLINE, AS ORIGINALLY LOCATED AND CONSTRUCTED UPON, OVER AND ACROSS SAID SECTION 18; THENCE NORTHWESTERLY ALONG SAID FORMER MAIN TRACK CENTERLINE FOR A DISTANCE OF 578.0 FEET; THENCE NORTHEASTERLY AT RIGHT ANGLES TO SAID MAIN TRACK CENTERLINE FOR A DISTANCE OF 15.0 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTHWESTERLY PARALLEL WITH SAID FORMERLY MAIN TRACK CENTERLINE FOR A DISTANCE OF 200.0 FEET; THENCE NORTHEASTERLY AT RIGHT ANGLES TO SAID FORMER MAIN TRACK CENTERLINE FOR A DISTANCE OF 190.0 FEET, MORE OR LESS, TO THE SOUTH LINE OF THE COUNTY ROAD, AS LOCATED AND CONSTRUCTED; THENCE EASTERLY ALONG SAID SOUTH LINE OF THE COUNTY ROAD FOR A DISTANCE OF 160.0 FEET; THENCE SOUTHERLY IN A STRAIGHT LINE TO THE POINT OF BEGINNING**

To have and to hold the above described premises together with all tenements, hereditaments and appurtenances thereto belonging unto the grantee and to grantee's heirs and assigns forever.

And the grantor does hereby covenant with the grantee and with grantee's heirs and assigns that grantor is lawfully seized of said premises; that they are free from encumbrance **except covenants, easements and restrictions of record; all regular taxes and special assessments, except those levied or assessed subsequent to date hereof;** that grantor has good right and lawful authority to convey the same; and that grantor warrants and will defend the title to said premises against the lawful claims of all persons whomsoever.

Executed this _18_ day of _Oct._ _2012_

Form software by: Automated Real Estate Services, Inc. - 800.330.1295                    File: **12C23178**

(2)



# Cass County GIS

Plattsmouth
0.73
Public Buildings
Courthouse
City Hall
Public School
Private School
Cemeteries
Transportation
Interstate
Interstate Ramp
Expressway
Ramp
Federal Highway
State Highway
Primary Road
Local Road
Minimum Maintenance
Railroad
Airport
Reference
County Boundary
Townships
Sections
Parks
Rivers
Municipal Areas
Town and City Limits
SID
County Boundary Area
Parks
N
W
E
S
0 100 200 300 400 500 600 Feet
Scale: 1:1,200
PRODUCED BY CASS COUNTY GIS DEPARMENT
INFORMATION SOURCES
AIRPORTS - FEDERAL AVIATION ADMINISTRATION
HYDROLOGICAL DATA - MODIFIED USGS NATIONAL HYDROGRAPHY DATASET
TOWN AND COUNTY BOUNDARIES, ROAD CENTERLINES, PARKS, SID BOUNDARIES, SCHOOLS, CEMETERIES - CASS COUNTY GIS DEPARTMENT
PUBLIC LAND SURVEY - CASS COUNTY SURVEYOR
GIS SOFTWARE - ARCPRO 3.1
THIS MAP IS FOR REFERENCE PURPOSES ONLY.

PO BOX 252
Pine City, MN  55063

March 21, 2022

Rex Hall
702 Ave G
Plattsmouth NE  68048

Re: Purchase and sale agreement

Dear Rex,

Please find enclosed Purchase and Sale agreement for you to review, sign and return to me at the address below;

Please sign the Purchase & sale agreement ( both copies) where indicated.   Please include the checks for the Processing fee and the earnest money.  Processing fee in the amount of $2,500 made payable to BNSF Railway Company, and the Earnest Money of $3,500 made payable to New York Bank of Mellon Trust Company, N.A.

Once received I will process and forward to our title & closing department to prepare for presentation to BNSF for review and acceptance.  Once BNSF has accepted and signed the agreement,  we will advise you to commence with the survey.

The Survey should include the portion of property proposed to sell which is depicted on the Attached Exhibit "A",  ;  we would also advise for you to have the portion surveyed that is in the legal description on the property you purchased from the independent party, so when the Quit Claim Deed from BNSF is sent in for recording, you will be able to show the assessor office, the correct legal of what was sold to your seller from the ANT LLC property.

If you have any questions, please contact me at 651-233-8927.

Sincerely,

Cathy Clune
JLL
PO BOX 252
Pine City MN  55063


ALL SALES ARE SUBJECT TO FINAL BNSF APPROVAL & ARE NOT FINAL UNTIL BNSF HAS ACCEPTED AND FULLY EXECUTED BY BNSF RAILWAY COMPANY

# BNSF RAILWAY COMPANY

## REAL ESTATE PURCHASE AND SALE AGREEMENT

This Real Estate Purchase and Sale Agreement ("**Agreement**") is entered into as of the Effective Date (defined below) between **REX N. HALL**  ("Buyer") and **BNSF RAILWAY COMPANY** ("**Seller**").  This Agreement shall not be binding upon either party unless and until both parties have executed and delivered this Agreement.  The submission of this document by Seller to Buyer shall not constitute an offer to sell by Seller.

In consideration of the mutual covenants set forth in this Agreement and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer agree as follows:

## GENERAL TERMS AND DEFINITIONS

1.       The following terms shall have the meanings set forth below:

Closing.        The consummation of the transaction contemplated by this Agreement, which shall be deemed to have occurred when both parties have delivered the items contemplated in Section 4 of this Agreement.

Closing Date       Notwithstanding, anything herein, this sale shall close on or before July 30, 2021. Seller shall have the right to extend the closing up to ninety (90) days, at Seller's sole judgment.

Earnest Money      The cash sum Three Thousand Five Hundred and no/100 ($3,500.00)dollars made payable to The Bank of New York Mellon Trust Company, NA.

Effective Date      The date of Seller's execution of this Agreement as indicated below Seller's signature hereto.

Property        That parcel of land situated in or near the City of Plattsmouth, County of Cass and State of Nebraska, shown hatched black on map marked Exhibit A dated 3/22/2021 attached hereto and made a part hereof, subject to revision as set forth below in Section 3.

Purchase Price      The sum of Eight Thousand  and no/100 ($8,000.00) dollars.

Review Period      The period commencing on the Effective Date and expiring at 5:00 p.m. central time on the date that is 60 days after the Effective Date.

## PURCHASE AND SALE

2.       (a)      Subject to the terms and conditions set forth in this Agreement, Seller agrees to sell to Buyer, and Buyer agrees to purchase and accept from Seller, for the Purchase Price, all of Seller's right, title and interest (if any), in and to the Property.

(b)      Seller may assign its rights (but not its obligations) under this Agreement to Goldfinch Exchange Company LLC, (Goldfinch) an exchange intermediary, in order for Seller to effect an exchange

under Section 1031 of the Internal Revenue Code. In such event, Seller shall provide Buyer with a Notice of Assignment, attached as Exhibit B, and Buyer shall execute an acknowledgement of receipt of such notice. Buyer may also assign its rights (but not its obligations) under this Agreement to an exchange intermediary in order for Buyer to effect an exchange under Section 1031 of the Internal of Revenue Code.

(c)    Upon submission by Buyer to Seller of this Agreement signed by Buyer, Buyer shall deposit the Earnest Money with Goldfinch as escrow agent. Goldfinch shall hold the Earnest Money in escrow pursuant to the terms and conditions of this Agreement. The Earnest Money shall be refunded to Buyer if this Agreement is not executed and delivered by Seller within forty five (45) days after the date Buyer delivers this agreement fully executed by Buyer and deposits the Earnest Money. Buyer shall not be entitled to any interest on the Earnest Money held by Goldfinch pursuant to this Agreement. Buyer acknowledges that receipt by Goldfinch of the Earnest Money shall not constitute acceptance of this Agreement or Buyer's offer provided, however, that Goldfinch shall return the Earnest Money to Buyer if Seller does not execute and deliver this Agreement within forty-five (45) days after Buyer deposits the Earnest Money. Goldfinch shall deliver the Earnest Money to the party entitled thereto pursuant to this Agreement, provided, however if there is a dispute between Buyer and Seller as to who is so entitled, Goldfinch may deposit the Earnest Money with a court of competent jurisdiction pending resolution of such dispute.

(d)    The balance of the Purchase Price shall be paid at Closing as provided below.

**INSPECTION**

3.    (a)    After the Effective Date, Buyer shall, at Buyer's sole cost and expense, cause to be prepared a survey of the Property certified to Seller, Buyer and such other parties as Buyer may choose showing the boundaries of the Property and any improvements located thereon (the "**Survey**"). Said Survey shall be delivered to Seller no later than twenty (20) days prior to the Closing Date. Seller shall have the right to review and require necessary changes to the Survey to more accurately describe the Property and any Easements located thereon. If Seller does not agree that the description of the Property contained on the Survey is the Property Seller wishes to sell or otherwise objects to the Survey then Seller may terminate this Agreement by written notice to Buyer in which case the Earnest Money shall be refunded to Buyer and neither party shall have any further obligation hereunder except those that expressly survive termination. If Seller agrees in writing that the Survey description is accurate then the description thereon shall be the definition of the Property for all purposes under this Agreement. In the event a city, county, or other governing authority where the Property is located (a "**Municipality**") requires a survey or plat to convey the Property (a "**Plat**"), the Buyer shall obtain, at Buyer's sole cost and expense, such Plat and the approval of such Municipality. Seller's obligations hereunder are conditioned upon Seller's approval of the Plat approved by the Municipality. Buyer shall provide the proposed Plat to Seller prior to submission to the Municipality and prior to the expiration of the Review Period.

(b)    Buyer shall have until the end of the Review Period to examine title to the Property. If Buyer elects to obtain a title commitment for the Property Buyer may deliver to Seller no later than the expiration of the Review Period written notice of any objections to the status of title or matters reflected on the Survey that Buyer may have together with a copy of such title commitment, Survey and all matters referenced therein. Seller shall have no obligation to cure any such objection. If Seller notifies Buyer in writing that Seller will cure any such objection Seller (a) shall make good faith efforts to cure such matter by the Closing Date and if not cured by such date Buyer may terminate this Agreement in which case the Earnest Money shall be refunded to Buyer and neither party shall have any further obligation hereunder except those that expressly survive termination, and (b) may effect such cure by causing the title company issuing the title commitment to remove such matter as an exception from coverage by paying additional premium therefor

or otherwise. If Seller at any time notifies Buyer in writing that Seller is not willing or able to cure any of the such objections (including those which Seller has previously endeavored to cure) then Buyer or Seller may terminate this Agreement by written notice to the other delivered within five (5) days after Seller so notifies Buyer that Seller is unwilling or unable to cure such objection. In the event of such termination, the Earnest Money shall be refunded to Buyer and neither party shall have any further obligation hereunder except those that expressly survive termination. If this Agreement is not so terminated, the parties shall proceed to Closing according to the remaining provisions of this Agreement.

(c) Prior to any entry upon the Property by Buyer, the surveyor preparing the Survey or other individuals on behalf of Buyer, Buyer shall execute and deliver to Seller an Entry and Confidentiality Agreement in the form attached hereto as Exhibit C and incorporated herein (the "**Entry Agreement**"). The terms and provisions of the Entry Agreement are incorporated herein, shall survive the Closing, shall not be merged into the Deed or any document delivered at Closing and shall survive any termination of this Agreement. Any breach by Buyer of its obligations under the Entry Agreement shall be deemed a breach by Buyer under this Agreement. Notwithstanding anything in this Agreement to the contrary, including the provisions of Section 6(a), nothing in this Agreement or the exercise of any remedy by Seller under this Agreement shall limit or affect in any manner any remedy available to Seller under the Entry Agreement in the event of a breach of Buyer's obligations under the Entry Agreement.

(d) Notwithstanding the foregoing provisions of Section 3(b), Buyer shall not be entitled to object to any judgment against Seller which may appear of record as a lien against the Property. Seller shall pay such lien if and when it is judicially determined to be valid, and Seller hereby indemnifies the Buyer for all loss arising out of Seller's failure to have a judgment lien so settled and satisfied.

(e) Notwithstanding the foregoing provisions of Section 3(b), Buyer shall not be entitled to object to the lien of any of Seller's mortgages. Seller shall deliver to Buyer, who shall place of record, good and sufficient releases of the liens of any mortgages on the Property securing indebtedness to which Seller is obligated to pay within one hundred eighty (180) days after the first meeting of Seller's Board of Directors held after the Closing. In the event Seller shall be unable to obtain said releases for any reason, Seller shall have the right to repurchase the Property from Buyer for the Purchase Price and Buyer shall reconvey the Property to Seller free and clear of defects or objections arising after the Effective Date upon which this Agreement shall terminate and neither party shall have any further rights or obligations hereunder except those that expressly survive termination.

## CLOSING

4.    (a) Subject to the terms of this Agreement, the Closing shall occur on the Closing Date. On or before the Closing Date Buyer shall (1) pay the Purchase Price, less the Earnest Money to Seller in cash, by certified check made payable to The Bank of New York Mellon Trust Company, NA or by wire transfer to Seller's account as designated by Seller and the Earnest Money shall become the property of Seller and no longer subject to the terms of this Agreement and (2) such other affidavits or certificates as is reasonably necessary or customary to consummate the transaction. After Buyer has delivered the foregoing items, Seller shall deliver to Buyer (1) a Quitclaim Deed in recordable form, subject to all matters of record and restating the exceptions and reservations set forth in Section 8 (the "**Deed**") conveying to Buyer Seller's interest, if any, in and to the Property, (2) counterparts of the Exchange Assignment, and (3) such other affidavits and certificates as is reasonably necessary or customary to consummate the transaction in form and substance acceptable to Seller.

## PRORATIONS AND CLOSING COSTS

5.     (a)  Real estate taxes and assessments payable or paid in the year of Closing shall be prorated by Seller and Buyer as of the Closing Date on the basis of the most recent ascertainable taxes assessed against the Property.  If the Property is not separately assessed for tax purposes then there shall be no proration of taxes between Buyer and Seller, the parties shall cooperate post-Closing to cause the Property to be separately assessed and each party shall indemnify the other for any failure to pay real estate taxes and assessments due with respect to the properties constituting the tax parcel to which the Property is a part.  Notwithstanding the foregoing, there shall be no proration for taxes to the extent the payment of same has been assumed by a tenant under an existing lease to be assigned to Buyer.  All outstanding assessments on the Property levied or due in the year of Closing and afterward shall be paid by Buyer.

(b)  The parties shall cooperate so that utilities serving the Property that are not the responsibility of a tenant under a lease to be assigned to Buyer at Closing, to the extent feasible, shall be switched into the name of Buyer as of the Closing Date, so that a final statement can be issued to Seller for the billing period ending on the Closing Date, and so that the first day of the first billing cycle in Buyer's name can begin on the Closing Date.  If, however, the final statement covering the final period of ownership by Seller also includes periods of ownership by Buyer, Buyer shall pay Seller at Closing the amount attributable to Buyer's period of ownership.  Buyer shall be responsible to pay all utilities serving the Property due after Closing.

(c)  Buyer shall pay all closing costs associated with Closing including, but not limited to, any escrow fees, documentary stamps and other recording costs associated with this transaction, excise taxes, the cost of any state, county or local transfer taxes, the cost of the Survey, and the costs associated with any title insurance obtained by Buyer.

(d)  If any real estate broker or agent can establish a valid claim for commission or other compensation as a result of Buyer having used their services in connection with the purchase of the Property, all such commission or other compensation shall be paid by Buyer.  Seller shall not be liable for any real estate commissions or finders fees to any party with respect to the sale of the Property, except amounts due to <u>Jones Lang LaSalle Brokerage Inc.</u> (**"Broker"**) pursuant to a separate agreement.  Buyer acknowledges that Broker has advised, and hereby advises, Buyer that the Broker is acting as on behalf of the Seller, with the duty to represent Seller's interest, and Broker is not the agent of the Buyer.  If a policy of title insurance is to be obtained, Buyer should obtain a commitment for title insurance which should be examined prior to closing by an attorney of Buyer's choice.  Prior to the execution of this Agreement, Broker has advised and hereby advises the principals of this transaction, that this Agreement is binding on them, and the principals hereby acknowledge that they have been so advised.  Broker has no authority to execute any document on behalf of Seller, make representations on behalf of Seller or bind Seller in any manner.

(e)  The obligations of the parties in this <u>Section 5</u>, to the extent incurred, shall survive any termination of this Agreement.

**DEFAULT AND REMEDIES**

6.     (a)     In the event of a default by Buyer under the terms of this Agreement, Seller's sole and exclusive remedies shall be: (a) terminate this Agreement whereupon the parties shall have no further obligations hereunder except those that expressly survive termination, or (b) waive such default and proceed Closing, or (c) obtain specific performance of this Agreement.  If Seller terminates this Agreement as provided in the previous sentence Seller shall be entitled to retain the Earnest Money.  Notwithstanding the foregoing, nothing contained herein shall waive or diminish any right or remedy Seller may have at law or in equity for Buyer's default or breach of any obligation hereunder to be performed by Buyer after Closing.  It is

hereby agreed that Seller's damages in the event of a default by Buyer hereunder are uncertain and difficult to ascertain, and that the Earnest Money constitutes a reasonable liquidation of such damages and is intended not as a penalty, but as liquidated damages.

      **(b)**      In the event of a default by Seller under the terms of this Agreement, Buyer's sole and exclusive remedies hereunder shall be to terminate this Agreement and receive a refund of the Earnest Money. Upon such termination and the payment of such sums by Seller the parties shall have no further obligations hereunder except those that expressly survive termination. Notwithstanding the foregoing, nothing contained herein shall waive or diminish any right or remedy Buyer may have at law or in equity for Seller's default or breach of any obligation hereunder to be performed by Seller after Closing.

## NATURE OF SALE

7.      Buyer has been allowed to make an inspection of the Property. **BUYER IS PURCHASING THE PROPERTY ON AN "AS-IS WITH ALL FAULTS" BASIS WITH ANY AND ALL PATENT AND LATENT DEFECTS, INCLUDING THOSE RELATING TO THE ENVIRONMENTAL CONDITION OF THE PROPERTY, AND IS NOT RELYING ON ANY REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER FROM SELLER AS TO ANY MATTERS CONCERNING THE PROPERTY,** including, but not limited to the physical condition of the Property; zoning status; tax consequences of this transaction; utilities; operating history or projections or valuation; compliance by the Property with Environmental Laws (defined below) or other laws, statutes, ordinances, decrees, regulations and other requirements applicable to the Property; the presence of any Hazardous Substances (defined below), wetlands, asbestos, lead, lead-based paint or other lead containing structures, urea formaldehyde, or other environmentally sensitive building materials in, on, under, or in proximity to the Property; the condition or existence of any of the above ground or underground structures or improvements, including tanks and transformers in, on or under the Property; the condition of title to the Property, and the leases, easements, permits, orders, licenses, or other agreements, affecting the Property (collectively, the "**Condition of the Property**"). Buyer represents and warrants to Seller that Buyer has not relied and will not rely on, and Seller is not liable for or bound by, any warranties, guaranties, statements, representations or information pertaining to the Property or relating thereto (including specifically, without limitation, Property information packages distributed with respect to the Property) made or furnished by Seller, the manager of the Property, or any real estate broker or agent representing or purporting to represent Seller, to whomever made or given, directly or indirectly, orally or in writing. Buyer assumes the risk that Hazardous Substances or other adverse matters may affect the Property that were not revealed by Buyer's inspection and indemnifies, holds harmless and hereby waives, releases and discharges forever Seller and Seller's officers, directors, shareholders, employees and agents (collectively, "**Indemnitees**") from any and all present or future claims or demands, and any and all damages, Losses, injuries, liabilities, causes of actions (including, without limitation, causes of action in tort or asserting a constitutional claim) costs and expenses (including, without limitation fines, penalties and judgments, and attorneys' fees) of any and every kind or character, known or unknown, arising from or in any way related to the Condition of the Property or alleged presence, use, storage, generation, manufacture, transport, release, leak, spill, disposal or other handling of any Hazardous Substances in, on or under the Property. Losses shall include without limitation (a) the cost of any investigation, removal, remedial, restoration or other response action that is required by any Environmental Law, that is required by judicial order or by order of or agreement with any governmental authority, or that is necessary or otherwise is reasonable under the circumstances, (b) capital expenditures necessary to cause the Seller remaining property or the operations or business of the Seller on its remaining property to be in compliance with the requirements of any Environmental Law, (c) Losses for or related to injury or death of any person, (d) Losses for or related to injury or damage to animal or plant life, natural resources or the environment, and (e) Losses arising under any Environmental Law enacted after transfer. The rights of Seller under this section shall be in addition to and not in lieu of any other

rights or remedies to which it may be entitled under this document or otherwise. This indemnity specifically includes the obligation of Buyer to remove, close, remediate, reimburse or take other actions requested or required by any governmental agency concerning any Hazardous Substances on the Property. The term **"Environmental Law"** means any federal, state or local statute, regulation, code, rule, ordinance, order, judgment, decree, injunction or common law relating in any way to human health, occupational safety, natural resources, plant or animal life or the environment, including without limitation, principles of common law and equity, the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Toxic Substances Control Act, and any similar or comparable state or local law. The term **"Hazardous Substance"** means any hazardous, toxic, radioactive or infectious substance, material or waste as defined, listed or regulated under any Environmental Law, and includes without limitation petroleum oil and any of its fractions. The provisions of this Section 7 shall be binding on Buyer, and its heirs, successors and assigns, shall be included in the Deed and shall be covenants running with the land.

## RESERVATIONS

8.     The obligations in this Section 8 shall be binding upon Buyer and its heirs, successors and assigns, shall be included in the Deed and shall be covenants running with the land benefiting Seller and Seller's successors and assigns. For purposes of this Section 8, Grantor shall mean Seller and Grantee shall mean Buyer. Buyer may object to the reservations set forth in Section 8(a) below in accordance with the provision of Section 3 and if Seller is unwilling or unable to cure such objection either party may terminate this Agreement as set forth in Section 3.

(a)   Grantee's interest shall be subject to the rights and interests of Grantor, Grantor's licensees, permittees and other third parties in and to all existing driveways, roads, utilities, fiber optic lines, tracks, wires and easements of any kind whatsoever on the Property whether owned, operated, used or maintained by the Grantor, Grantor's licensees, permittees or other third parties and whether or not of public record. Grantor shall have a perpetual easement on the Property for the use of such existing driveways, roads, utilities, fiber optic lines, tracks, wires and easements by Grantor and Grantor's licensees, permittees and customers. Grantor shall have a non-exclusive easement for the construction, maintenance and operation of one or more pipelines or fiber optic lines and any and all communications facilities as may be located in the future on the Property within 60 feet of the center line of any Main Track on or adjacent to the Property and as may be presently located on the Property.

(b)   Grantee's interest shall be subject to a reservation to Grantor of all coal, oil, gas, casing-head gas and all ores and minerals of every kind and nature including sand and gravel underlying the surface of the Property, together with the full right, privilege and license at any and all times to explore, or drill for and to protect, conserve, mine, take, remove and market any and all such products in any manner which will not damage structures on the surface of the Property, together with the right of access at all times to exercise said rights.

(c)   Any improvements constructed or altered on the Property after the date Grantor quitclaims its interest to Grantee shall be constructed or altered in such a manner to provide adequate drainage of water away from any of Grantor's railroad tracks on nearby property.

(d)   For 99 years after the Closing Date, Grantee covenants and agrees that the Property shall be used solely for non-residential purposes and that the groundwater will not be used for drinking water or irrigation purposes.

## REPRESENTATIONS

9.      Buyer represents and warrants to Seller that if Buyer is other than a natural person or persons that it is a validly formed _____N/A_____ under the laws of the State of N/A; that it is in good standing in the state of its organization and in the state in which the Property is located; that it has all requisite authorizations to enter into this Agreement; and that the parties executing this Agreement on behalf of Buyer are duly authorized to so do. Buyer represents and warrants to Seller that it is not subject to any bankruptcy proceeding. Seller represents and warrants to Buyer that it is a validly formed corporation under the laws of the State of Delaware; that it is in good standing in the state of its organization and in the state in which the Property is located; that it is not subject to any bankruptcy proceeding; that it has all requisite corporate authorizations to enter into this Agreement; and that the parties executing this Agreement on behalf of Seller are duly authorized to so do. It shall be a condition of each party's obligations to Close this transaction that the representations and warranties of the other party contained herein are true and accurate as of Closing, provided, however that if one party waives such condition by proceeding to Close with knowledge that any of the second party's representations or warranties are inaccurate, the second party shall have no liability with respect to such inaccuracy known by the first party.

## MISCELLANEOUS

10.     (a) Any notice under this Agreement must be written. Notices must be either (i) hand-delivered; (ii) placed in the United States certified mail, return receipt requested, addressed to the recipient; (iii) deposited with a nationally recognized overnight delivery service, addressed to the recipient as specified below; or (iv) telecopied by facsimile transmission to the party at the telecopy number listed below, provided that such transmission is followed with a copy sent by overnight delivery or regular mail to the address specified below. Any notice is effective upon deposit with the U.S. Postal Service or with the overnight delivery service, as applicable; all other notices are effective when received. All notices shall be addressed to the address of the recipient indicated below the signature of such party below. Either party may change its address for notice by proper notice to the other party.

(b) If the approval of any governmental agency is required for the sale of Seller's interest (if any) in the Property, it is understood and agreed that Seller's obligations under this Agreement are conditioned upon obtaining such approval and that both parties shall use good faith efforts to obtain such approval. If such approval cannot be obtained by the Closing Date, Seller may elect to extend the Closing Date to a date no later than ninety (90) days after the original Closing Date. In the event said approval cannot be obtained by such extended date, either party may terminate this Agreement without liability to the other, except that the Earnest Money shall be refunded to Buyer and thereafter neither party shall have any obligation hereunder except those that expressly survive termination.

(c) Nothing in this Agreement shall prevent Seller from discontinuing service over any railroad line or lines by which rail service may be provided to the Property.

(d) If, prior to Closing, the Property or any portion thereof is destroyed or damaged, or becomes subject to a taking by virtue of eminent domain to any extent whatsoever then either party may terminate this Agreement by written notice to the other within thirty (30) days after notice of such fact (but in any event prior to Closing). If so terminated, the Earnest Money shall be refunded to Buyer and neither party shall have any further obligations hereunder except those that expressly survive termination. If not so terminated the parties shall proceed with the Closing.

(e) Time is of the essence of each of the party's respective obligations under this Agreement. Whenever a date specified in this Agreement falls on a Saturday, Sunday, or federal holiday, the date will be extended to the next business day.

Real Estate Purchase and Sale Agreement                                    Form 603; Rev12/22/09

(f)  This Agreement and, to the extent executed, the Entry Agreement, contains the entire Agreement between Seller and Buyer with respect to the Property.  Oral statements or prior written matters not specifically incorporated into this Agreement are superceded hereby.  No variation, modification, or change to this Agreement or the Entry Agreement shall bind either party unless set forth in a document signed by both parties. No failure or delay of either party in exercising any right, power or privilege hereunder shall operate as a waiver of such party's right to require strict compliance with any term of this Agreement. The captions above the section numbers of this Agreement are for reference only and do not modify or affect this Agreement.  Each party has had the opportunity to have counsel review this Agreement and the Entry Agreement and, therefore, no rule of construction that any ambiguities are to be resolved against the drafting party must not be employed to interpret this Agreement, the Entry Agreement or any closing document.  This Agreement and the Entry Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute the same Agreement.  This Agreement and the Entry Agreement are intended to be performed in accordance with, and only to the extent permitted by, all applicable laws, ordinances, rules and regulations.  If any term or provision of this Agreement or the Entry Agreement or the application thereof to any person or circumstance shall for any reason and to any extent be held to be invalid or unenforceable, then such term or provision shall be ignored, and to the maximum extent possible, this Agreement and the Entry Agreement (to the extent executed) shall continue in full force and effect, but without giving effect to such term or provision.

(g)  Buyer may not assign its interest in this Agreement or the Entry Agreement without Seller's prior written consent.  The provisions of this Agreement and, to the extent executed, the Entry Agreement, shall bind Seller, the Buyer, and their heirs, executors, administrators, successors and assigns and shall and inure to the benefit of the Seller, the Buyer and their heirs, executors, administrators, permitted successors and assigns.  If Buyer is more than one person or entity, Buyer's obligations under this Agreement and, to the extent executed, the Entry Agreement, shall be joint and several.

(h)  This Agreement relates only to land.  Unless otherwise herein provided, any conveyance shall exclude Seller's railroad tracks and appurtenances thereto, Seller's buildings and any other improvements on the Property, all of which may be removed by Seller within 90 days following conveyance of the Property, and if not removed, shall be deemed abandoned by the Seller without obligation on the Seller's part and shall thereafter be and become the Property of the Buyer in place.  Notwithstanding the foregoing, Seller shall not have to remove any improvements or fixtures for which an easement has been reserved hereunder or in the deed.

(i)  Seller is not a foreign person as the term is used and defined in Section 1445 of the Internal Revenue Code of 1986, as amended and the regulations promulgated thereunder.  Seller shall, upon request of Buyer, complete an affidavit to this effect and deliver it to Buyer on or before closing of said sale.

(j)  The provisions of Sections 5-8 and Section 10 of this Agreement shall survive Closing and shall not be merged into the Deed or any other document delivered at Closing.  The provisions of Section 9 of this Agreement shall survive Closing for a period of one year and shall not be merged into the Deed or any other document delivered at Closing.  Nothing in this section shall alter any requirement in any other Section of this Agreement for the provisions of such section to be incorporated into the Deed, such as Sections 7 and 8.

(k)  If any action at law or in equity is necessary to enforce or interpret this Agreement, the prevailing party will be entitled to reasonable attorneys' fees, costs, and discovery or investigation expenses in addition to any other relief to which that party may be entitled.

(l) SELLER AND BUYER IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUITE OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO, THIS AGREEMENT.

**ADMINISTRATIVE FEE**

11. Buyer acknowledges that a material consideration for this agreement, without which it would not be made, is the agreement between Buyer and Seller, that the Buyer shall pay upon return of this Agreement signed by Buyer to Seller's Broker a processing fee in the amount of **$2,500.00** over and above the agreed upon Purchase Price. Said fee shall be made payable to BNSF Railway Company by a separate check.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF**, Buyer and Seller have executed this Agreement to be effective as of the Effective Date.

**BUYER**:

REX N. HALL

Buyer's name as it is to appear on deed
(PRINTED/TYPED)

By: _Rex Hall_ (signature)
Print Name: _Rex Hall_
Title: _Buyer_

Buyer's Address:

702 Ave. G
Plattsmouth  NE 68048.
Attn: _Rex Hall_
Fax: _N/A_
Phone: _402-505-2171_

Buyer's SSN or EIN: _____

**SELLER**:

BNSF RAILWAY COMPANY

By: _____
Print Name: _Blaine Bilderback_
Title: _Director Real Estate_

Seller's Address:

c/o JLL RPG
4200 Buckingham Road        Suite 110
Fort Worth, TX  76155
Attn: Cathy M. Clune

Phone: _651-233-8927_

_____
Date of Seller's Execution (Effective Date)



EXHIBIT "A"